[No. 50823–2.  En Banc.  June 27, 1985.]

*In the Matter of the Estate of*
FRANK S. SHAUGHNESSY.

VIRGINIA KEZELE, *Petitioner*, v. NEIL P. CRONIN, *Respondent.*

*Timothy W. Mahoney,* for petitioner.

*Michael J. Cronin* and *Winston & Cashatt,* for respondent.

DOLLIVER, C.J.—Frank S. Shaughnessy died in October of 1979 at the age of 89. He was survived by five brothers and sisters. His will could not be located at the time of his death.

In November 1979, Neil Cronin, who had been Shaughnessy's friend and attorney, filed a petition for an order probating a "lost will". The lost will had been drafted by Cronin and purported to make several specific bequests including one of $5,000 to Cronin. Only one of decedent's

sisters, however, shared in the bequests. The lost will also named Cronin executor and remainderman of Shaughnessy's estate. *See generally In re Estate of Shaughnessy,* 97 Wn.2d 652, 653, 648 P.2d 427 (1982) (*Shaughnessy* I).

After the lost will was admitted to probate in Spokane County Superior Court, several of Shaughnessy's brothers and sisters filed a petition contesting its validity. The trial court (per Zellmer, J., visiting) upheld the will. On appeal to this court, we held the deadman's statute (RCW 5.60-.030) prohibited attorney Cronin from testifying in support of the lost will and, since there were not two witnesses to the will (RCW 11.20.070), the will was invalid. *See Shaughnessy* I. Because the heirs prevailed on the evidence issue, the court did not address the heirs' further claim that Cronin exerted undue influence on Shaughnessy. (The trial court had rejected this contention.) The *Shaughnessy* I court remanded the case to the probate court for distribution of the estate according to law.

On remand, Shaughnessy's niece Virginia Kezele (petitioner herein) was appointed under the intestacy statute to administer the estate. Shortly thereafter, Cronin filed a "Final Account and Petition for Approval of Disbursements, and Allowance of Costs and Fees" in which he sought approximately $4,300 in personal representative fees and over $18,000 in attorney fees. (Cronin's brother Michael had represented him in the proceedings below.)

Cronin's petition was set to be heard before Lincoln County Superior Court Judge Zellmer, who presided over the will contest while he was a visiting judge in Spokane County. On the day of the scheduled hearing, Kezele filed an affidavit of prejudice and a motion to transfer the case to Spokane County. Judge Zellmer denied both motions.

After hearing oral argument and reviewing the parties' briefs and its trial notes, the trial court granted Cronin a personal representative fee of $3,000 and attorney fees totaling $15,000. In its memorandum opinion on the allowance of fees and costs, the trial court pointed out Neil Cronin, until our decision in *Shaughnessy* I,

was the personal representative serving under a validly proven will and was performing his required duty to defend that will in all proceedings. The law required him to do what he did pursuant to the orders of two different judges, and he acted in complete good faith in those proceedings.

The trial court further stated it found

no evidence that [Neil Cronin] acted in anything other than good faith in possible settlement . . . [and] acted in good faith regardless of the fact that he was a beneficiary under that will.

In an unpublished opinion, the Court of Appeals affirmed.

Virginia Kezele raises four issues:

1. Is an affidavit of prejudice timely when it is filed prior to a post–will contest hearing at which the trial court is being asked to award the outgoing executor attorney and personal representative fees?

2. Was it proper to hold a fee hearing outside the county in which a case has been filed?

3. Does the trial court have jurisdiction to determine attorney and administrator fees after a successor administrator is appointed?

4. May an executor who unsuccessfully defended a lost will in good faith recover attorney fees even though he drafted the will and was named a specific and residual beneficiary?

I

RCW 4.12.050 entitles "[a]ny party to or any attorney appearing in any action or proceeding" to file an affidavit of prejudice provided it is filed prior to the time the trial court rules on any motion or issue which requires the exercise of discretion. The issue here is whether the October 19, 1982, hearing at which Judge Zellmer awarded Cronin attorney and personal representative fees was a "new proceeding" for which an affidavit of prejudice may be filed.

The general rule holds an affidavit of prejudice must be filed prior to a party's first appearance in a matter.

*State ex rel. Goodman v. Frater,* 173 Wash. 571, 24 P.2d 66 (1933). While the October 19 hearing was Kezele's first appearance in this matter, this court held in *In re Estate of Thomas,* 167 Wash. 127, 8 P.2d 963 (1932) that proceedings following a will contest are not "new proceedings" for purposes of an affidavit of prejudice. *Thomas* held a post–will contest hearing at which a new administrator was appointed was not a "new proceeding" for purposes of the affidavit of prejudice statute. If a post–will contest hearing at which a new administrator was appointed was not a "new proceeding" for purposes of the affidavit of prejudice statute, neither would a post–will context hearing granting attorney fees be a new proceeding. Both *Thomas* and this case involved post–will contest proceedings at which the judge who had heard the will contest was ruling on a post–will contest matter. Both involved the same subject matter, *i.e.,* the disposition of the estate. In fact, the present case is less a new proceeding than *Thomas* since the trial court is not ruling on matters involving the new administration and there are no new facts or issues before the court. *Cf. State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 271 P.2d 435 (1954) (proceeding to modify child custody provisions of a divorce is a new proceeding).

Kezele, however, asserts the October 19 fee hearing was a new proceeding since this was the first time she appeared in the matter. *See Marine Power & Equip. Co. v. Department of Transp.,* 102 Wn.2d 457, 687 P.2d 202 (1984) (corporate defendant joined late in discovery may file affidavit of prejudice); *State ex rel. Goodman v. Frater, supra* (third party defendant joined after judgment and 2 days into the execution phase of the trial). These cases are distinguishable. The parties seeking affidavits of prejudice in *Marine Power* and *Frater* were joined; here, Kezele was not joined as a party but was brought into the litigation by virtue of her having been appointed to succeed Cronin as administrator for Shaughnessy's estate. The important difference is that in the joinder cases it is the joined party who asserts it will be prejudiced by a judge. In contrast, Kezele is not a new

party to the action but merely represents the estate in a fiduciary capacity; it is the estate which stands to be prejudiced. Since the trial court has already made a discretionary decision with respect to the estate (*e.g.,* deciding the will contest), the estate cannot now file an affidavit of prejudice.

## II

■ Kezele is correct that will contests generally are heard in the county in which the decedent was a resident at the time of his death. *See* RCW 2.08.030; RCW 11.16-.050(1). RCW 2.04.200, however, provides that court rules supersede any inconsistent statutes. *Emwright v. King Cy.,* 96 Wn.2d 538, 637 P.2d 656 (1981). Thus, the applicable rule is CR 77(c)(8)(B), which provides:

> Powers. Whenever a visiting judge has heard or tried any case or matter and has departed from the county, he may require the argument or any posttrial motion to be submitted to him on briefs at such place within the state as he may designate and he may sign findings of fact, conclusions of law, judgments and posttrial orders anywhere within the state. See also RCW 2.08.140 and 2.08-.150.

Judge Zellmer did not err in holding the hearing in Lincoln County. RCW 2.08.200, moreover, provides that superior court judges hearing cases outside their home counties may decide, rule, and determine those cases in the home county of the particular judge. Since the October 19 attorney/administrator fee hearing was ancillary to the will contest, Judge Zellmer had the authority to hear the matter in Lincoln County.

Furthermore, Kezele was not prejudiced by the hearing taking place in Lincoln County since she had 1 week to make arrangements for witnesses to attend the Lincoln County hearing.

## III

■ Kezele, citing *In re Estate of Aaberg,* 25 Wn. App. 336, 607 P.2d 1227 (1980), asserts Judge Zellmer lost juris-

diction over this matter at the time executor Cronin was replaced by Kezele. *Aaberg* involved RCW 11.68.070 which deals with personal representatives removed for nonfeasance. In contrast, Cronin was removed when the will under which he was appointed executor was invalidated. This case involves a will contest under RCW 11.24 and not removal of an executor under RCW 11.68. The Court of Appeals was correct in dismissing this issue.

## IV

The general rule is that personal representatives who perform their duty to defend a will in good faith may, in the discretion of the trial court, recover personal representative and attorney fees and costs. RCW 11.48.050 (all necessary expenses to care, manage, and settle estates); *In re Estate of Reilly,* 78 Wn.2d 623, 479 P.2d 1 (1970); *In re Estate of Vance,* 11 Wn. App. 375, 522 P.2d 1172 (1974); RCW 11.24.050 (attorney fees and costs allowed against unsuccessful contestant in will contest).

Relying both on the record and on his trial notes from the will contest, the trial judge found substantial evidence of good faith on the part of Neil Cronin, in admitting the lost will to probate, defending the will, and in seeking settlement. The notes are not included in the record before us. We concur with the holding of the Court of Appeals that substantial evidence existed to support the finding of good faith by the trial court. This being so, it will not be overturned on appeal. *See Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959). We decline to apply an irrebuttable presumption of bad faith to a will prepared by an attorney who is named as a beneficiary. *See In re Estate of Smith,* 68 Wn.2d 145, 158, 411 P.2d 879, 416 P.2d 124, 19 A.L.R.3d 559 (1966) (Rosellini, C.J., dissenting).

Where good faith has been proved, the rule announced in *In re Estate of Jolly,* 3 Wn.2d 615, 101 P.2d 995, 128 A.L.R. 993 (1940) controls. *Jolly* held personal representatives who perform their duty to defend a will in

good faith may recover reasonable personal representative and attorney fees and costs, even if the will is ultimately invalidated. The facts in *Jolly* are in all essential particulars identical to the case before us including the fact that the executor in the invalidated will was an attorney. The court stated in *Jolly,* at 626:

> [T]o deny [the personal representative] costs would be to encourage and promote failure of duty. If the rule contended for by appellant be now adopted, then, in the future, an executor in the position in which [the personal representative] was when he was cited into court, must either default or show cause at his peril, or, having gone to the point to which [the personal representative] went and prevented the revocation of the will under which he was acting by securing a jury verdict and a judgment sustaining it, in case an appeal should be taken from that judgment, would be compelled to let the appeal go by default or run the chance of never being reimbursed for his own outlays and expenses, to say nothing of having his adversary's costs charged against him if the appellate court should reverse the trial court. Since duty and the law require an executor to defend in such a situation, he should not be required to defend at his peril.

*See also* RCW 11.48.210 (attorney fees and compensation for personal representative); RCW 11.24.040 (in a will contest, executor is not liable for any act done in good faith). *See also In re Estate of Smith, supra.*

One final issue remains. Neil Cronin was both a legatee ($5,000) and the residual beneficiary of the will. Kezele argues this should bar recovery of executor or attorney fees. She cites a number of cases where fees were disallowed. *Gwinn v. Church of the Nazarene,* 66 Wn.2d 838, 405 P.2d 602 (1965); *In re Estate of Kleinlein,* 59 Wn.2d 111, 366 P.2d 186 (1961); *In re Estate of Riemcke,* 80 Wn.2d 722, 497 P.2d 1319 (1972). These cases are distinguishable since in each of them the executors failed to show they acted in good faith in furtherance of their statutory duty as executors rather than in their own self–interest as beneficiaries.

Our adherence to the rule in *In re Estate of Jolly, supra,* does not mean we approve of attorneys drawing wills in

which they are either executors or beneficiaries or both. Even with a finding of good faith, as in this case, such actions cannot help but engender suspicion and, as here, lengthy and expensive will contests. While we do not hold, as Kezele suggests, that this violates the Code of Professional Responsibility, it is an activity of which we disapprove, in which we believe no attorney should engage, and which should not occur in the future.

Affirmed.

UTTER, ANDERSEN, GOODLOE, and DURHAM, JJ., concur.

BRACHTENBACH, J. (dissenting)—A lawyer who draws a will naming himself as a specific beneficiary, the executor and the residual beneficiary should know better.

No authority is needed to assert that a lawyer who does that should not only not benefit from the estate, but should not in any way benefit from the fruits of the estate, either by way of a bequest or having the estate pay any part of his attorney's fees or a fee as personal representative.

Good faith, which was proved, cannot overcome such obvious ethical conflicts.

I would hold that no fees of any nature should accrue to the benefit of the lawyer. I find the majority's holding incredible under a standard of what is right and what is wrong.

DORE, PEARSON, and CALLOW, JJ., concur with BRACHTENBACH, J.

Reconsideration denied August 28, 1985.