[No. 23053-4-II.    Division Two.    February 5, 1999.]

WASHINGTON CITIZEN ACTION, *Appellant*, v. THE OFFICE OF THE INSURANCE COMMISSIONER, *Respondent*.

*David F. Stobaugh* of *Bendich, Stobaugh & Strong, P.C.*, for appellant.

*Christine O. Gregoire, Attorney General*, and *John G. Hennen* and *Sara J. Finlay, Assistants*, for respondent.

ARMSTRONG, A.C.J. — In November 1972 the voters passed the Fair Campaign Practices Act, also known as the Public Disclosure Act (PDA) (RCW 42.17) which, with few exceptions, makes records held by governmental agencies available to the public. The PDA took effect on January 1, 1973.

RCW 42.17.900. A few months later, the Legislature passed RCW 48.13.220(4)(g). This statute protects from public disclosure, information supplied to the Insurance Commissioner for a proposed acquisition of one insurance company by another. Such information is not available to the public unless, after a hearing, the Commissioner decides that disclosure is in the interest of policyholders, stockholders, or the public. Washington Citizen sought access to documents filed with the Insurance Commissioner of the proposed acquisition of Virginia Mason Health Plan by Group Health Cooperative. After the Commissioner denied the request, Washington Citizen sued to compel disclosure. The trial court granted summary judgment dismissing Washington Citizen's complaint. On appeal, Washington Citizen contends that RCW 48.13.220(4)(g) is unconstitutional because (1) it amended or repealed the PDA (RCW 42.17) within two years after its enactment in violation of article II, section 41, (2) it amended the PDA in violation of article II, section 37, and (3) it embraced more than one subject not expressed in its title in violation of article II, section 19. In addition, Washington Citizen contends that the PDA controls over conflicting provisions in RCW 48.13.220(4)(g) and that even if the statute is valid, the de novo judicial procedures of the PDA apply in reviewing a refusal to disclose records under the statute. Finally, assuming RCW 48.13.220(4)(g) to be constitutionally questionable, Washington Citizen suggests an interpretation that would harmonize the statute with the PDA and thus eliminate the possible defects. We hold the statute constitutional.

## FACTS

In 1995, Virginia Mason Health Plan, Inc. agreed to the acquisition of a majority of its stock by Group Health Cooperative of Puget Sound. As required by statute, Group Health filed with the Insurance Commissioner a notice of intent to acquire a majority interest in Virginia Mason. RCW 48.13.220(4). This statute provides that the contents

of any notice of intended acquisition "and information pertaining thereto shall be kept confidential, shall not be subject to subpoena, and shall not be made public unless after notice and hearing the commissioner determines that the interests of policyholders, stockholders, or the public will be served by the publication thereof." RCW 48.13.220(4)(g).

Washington Citizen submitted to the Commissioner a PDA request to inspect "Group Health and Virginia Mason's affiliation filing before the Insurance Commissioner" and "all other documents, memoranda, etc.[,] originating from Group Health or Virginia Mason on the subject." The Commissioner denied the request, citing RCW 48.13.220(4)(g) as well as RCW 42.17.260(1) of the PDA (allowing agencies to deny disclosure under any "statute which exempts or prohibits disclosure of specific information or records").

Article II, Section 41

■ Washington Citizen argues that RCW 48.13.220(4)(g) violates the State Constitution, article II, section 41. Article II, section 41 states that no law "approved by a majority of the electors voting thereon shall be amended or repealed by the legislature within a period of two years following such enactment[,]" provided that such an enactment may be amended within two years by a two-thirds vote of each house of the Legislature. RCW 48.13.220(4)(g) was enacted in 1973 within a few months after the voters approved the PDA by initiative. LAWS OF 1973, ch. 1, § 1 (Initiative Measure No. 276, approved November 7, 1972); LAWS OF 1973, ch. 151, § 4. Assuming RCW 48.13.220(4)(g) amended or repealed the PDA, the statute was approved by more than two-thirds of each house. Thus, RCW 48.13.220(4)(g) did not violate article II, section 41, in that regard.

Article II, Section 37

Washington Citizen next argues that to the extent RCW 48.13220(4)(g) "amended" the PDA, it violates the State

Constitution, article II, section 37. That section provides that "[n]o act shall ever be revised or amended by mere reference to its title, but the act revised or the section amended shall be set forth at full length."

■ ■ The purpose of section 37 is to disclose the effect of new legislation on existing laws. *State v. Thorne*, 129 Wn.2d 736, 753, 921 P.2d 514 (1996). It was aimed at combating the practice of amending or revising laws by additions or alterations that, without the presence of the original law, were unintelligible. *Thorne*, 129 Wn.2d at 753. A new enactment does not fall within article II, section 37, however, merely because it incidentally affects other legislation on the same subject. An act complete in itself, not requiring reference to other statutes to understand its purpose and meaning, is not subject to article II, section 37. *Thorne*, 129 Wn.2d at 753-54. And even though such an act modifies existing laws to the extent it "renders the existing law by itself 'erroneous' in a certain sense," such "infirmities are not of constitutional magnitude." *Washington Educ. Ass'n v. State*, 97 Wn.2d 899, 906, 652 P.2d 1347 (1982). The constitutional provision, in other words, was not intended to prohibit the passage of a law that fully declares its terms without direct reference to other laws, though its effect may be to enlarge or restrict the operation of other statutes. *State v. Manussier*, 129 Wn.2d 652, 665, 921 P.2d 473 (1996), *cert. denied*, 520 U.S. 1201, 117 S. Ct. 1563 (1997).

■ RCW 48.13.220(4)(g) is complete and does not require reference to other laws to make clear its meaning and effect. It describes comprehensively the duties of insurance companies with respect to the acquisition of stock in other corporations. As part of this legislation, the Commissioner is required to keep confidential the documents filed to obtain approval of such acquisitions unless certain conditions are met. While this provision may have impliedly altered the requirements of the PDA as to such records, no reference to the PDA or to any other law is necessary to understand the meaning and effect of the statute. Accord-

ingly, RCW 48.13.220(4)(g) does not violate article II, section 37.

## Article II, Section 19

■■ Washington Citizen next contends RCW 48.13.220(4)(g) violates article II, section 19 of the State Constitution, which states that "[n]o bill shall embrace more than one subject, and that shall be expressed in the title." There is no violation here. The bill containing RCW 48.13.220(4)(g) was entitled "Insurance Companies— Investment Requirements," and was described as "AN ACT relating to insurance" amending certain specified sections of the insurance code. LAWS OF 1973, ch. 151. A title of this sort, suggesting the general subject stated, complies with the State Constitution article II, section 19. *Washington Fed'n of State Employees v. State,* 127 Wn.2d 544, 554, 901 P.2d 1028 (1995). Any subject reasonably germane to the title may be embraced within the body of the bill, provided there is a rational unity between the general subject and its subdivisions. *Washington Fed'n,* 127 Wn.2d at 555-56. RCW 48.13.220(4)(g) sets forth the procedure for proposed acquisitions of one insurance company by another, a subject reasonably germane to the bill's general title.

## Does RCW 48.13.220(4)(g) conflict with the PDA?

■ Washington Citizen further argues that, even if RCW 48.13.220(4)(g) is constitutionally valid, it must yield to the PDA which governs "[i]n the event of conflict between the provisions of this act and any other act[.]" RCW 42.17.920. The PDA now expressly exempts from its provisions any records that fall within some "other statute which exempts or prohibits disclosure of specific information or records." RCW 42.17.260(1). Thus, to the extent RCW 48.13.220(4)(g) prohibits disclosure of records that would otherwise be disclosable under the PDA, there is no "conflict" requiring the PDA to be given priority.

Washington Citizen counters that the legislature could not have intended RCW 48.13.220(4)(g) to fit within the "other statute exemption" because the other statute

exemption was not passed until 1987, 14 years after RCW 48.13.220(4)(g). But we are not concerned with what the legislature intended in 1973. When Washington Citizen asked for the records in 1995, both RCW 48.13.220(4)(g) and the other statute exemption provision of the PDA were in effect. Thus, the only inquiry is whether RCW 48.13.220(4)(g) is constitutional and whether it fits within the "other statute" exemption. We have answered yes to both.

■ Next Washington Citizen suggests an interpretation of RCW 48.13.220(4)(g) that would avoid any constitutional infirmities. The statute, according to this argument, creates an additional method of getting records. Thus, all records of the insurance commissioner are available to the public under the PDA unless a specific PDA exemption applies. And the Insurance Commissioner can release even PDA exempt records through the provisions of RCW 48.13.220(4)(g).

Washington Citizen cites *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 580 P.2d 246 (1978), and *Porter v. Department of Justice*, 717 F.2d 787 (3d Cir. 1983), as examples of statutes that have been "harmonized" with the PDA and Freedom of Information Act (FOIA), 5 U.S.C. § 552 (1966), respectively. Neither case is on point.

In *Hearst* the statute explicitly interpreted a PDA section to clarify an existing PDA exemption. *Hearst*, 90 Wn.2d at 139. In *Porter*, the Justice Department claimed that the Privacy Act of 1974, 5 U.S.C. § 552a, provided the sole means by which an individual could obtain information contained in FBI files. *Porter*, 717 F.2d at 790. In construing the Privacy Act alongside FOIA, the Third Circuit refused to apply a section of the Privacy Act instead of the FOIA. The court held that the plain language and intent of the two acts mandated that FOIA be a method for disclosure as well as the Privacy Act. *Porter*, 717 F.2d at 796-98.

We decline to adopt this interpretation for two reasons. First, we have found RCW 48.13.220(4)(g) constitutional. Second, the plain wording of the statute runs counter to

Washington Citizen's proposed interpretation. Nothing in the statute says it applies only to records exempt under the PDA.

Procedures

■ Washington Citizen also contends that RCW 48.13.220(4)(g) does not overcome the *procedural* requirements of the PDA. Specifically, Washington Citizen argues that if the Commissioner denies disclosure, her decision is subject to de novo review as prescribed by the PDA, not judicial review under the Administrative Procedure Act (APA). *See* RCW 42.17.340(3); *Newman v. King County*, 133 Wn.2d 565, 571, 947 P.2d 712 (1997) (de novo review under the PDA). We disagree.

RCW 34.05.510(3), the APA, establishes the exclusive means of judicial review of agency action, except "[t]o the extent that de novo review or jury trial review of agency action is expressly authorized by provision of law." RCW 34.05.510(3).

RCW 48.13.220(4)(g) does not authorize de novo review of the Commissioner's decision as to disclosure of documents. Thus, review is controlled by the APA.

Consolidation

■ Washington Citizen moved to consolidate its action with the earlier action filed by Group Health. The trial court denied the motion and Washington Citizen assigns error to the denial. We review the ruling for abuse of discretion. *State v. Norby*, 122 Wn.2d 258, 265, 858 P.2d 210 (1993) (citing *State v. Orange*, 78 Wn.2d 571, 573, 478 P.2d 220 (1970)). We find none. Moreover, Washington Citizen does not demonstrate that it was harmed by the ruling.

In conclusion we hold that RCW 48.13.220(4)(g) is constitutional and that it controls Washington Citizen's request for release of information from the Insurance Commissioner pertaining to the proposed acquisition by Group Health. Further, the APA appeals procedure applies to the dispute, not the PDA's de novo appeal.

Affirmed.

SEINFELD and HUNT, JJ., concur.

Review denied at 138 Wn.2d 1004 (1999).